UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN CHAMBERS,

       Plaintiff,

v.                                                                          Case No. 1:19-cv-489
                                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his application for disability insurance benefits (DIB).

    **I.**    **Background**

This is plaintiff's second appeal of an unfavorable ALJ's decision in this Court. Plaintiff applied for DIB on March 18, 2011, alleging a disability onset date of June 1, 2008. PageID.45. His claim was denied. PageID.45. Administrative law judge (ALJ) James F. Prothro heard plaintiff's claim and issued a decision on May 17, 2013, finding that plaintiff was not disabled. PageID.45-58. The Appeals Council denied review. PageID.26-28. Plaintiff appealed the final decision to this Court in *Chambers v. Commissioner*, 1:14-cv-1014 ("*Chambers I*").

In *Chambers I*, plaintiff alleged that the ALJ's decision "failed to consider the treating doctor's opinion in deciding whether plaintiff's depression and anxiety met or equaled a listing." PageID.343.[1] The Court agreed and summarized the reasons for remand as follows:

> Plaintiff contends that the ALJ did not refer to Dr. Fomunung's opinion when determining whether plaintiff met the requirements of a listed impairment. In finding that plaintiff met Listings 12.04 and 12.09, the ALJ gave little weight to the opinions of Dr. Fomunung and other treating psychiatrists because, according to the ALJ, "none of these opinions addressed the claimant's alcohol abuse." PageID.53. Contrary to the ALJ's decision, Dr. Fomunung's opinion explicitly referred to plaintiff's alcohol abuse. Then, the ALJ did not address Dr. Fomunung's opinion when he evaluated whether plaintiff met a listed impairment without considering the substance abuse. PageID.54-55. Finally, as discussed, *infra*, the ALJ did not properly evaluate Dr. Fomunung's opinion. For these reasons, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of whether plaintiff met the requirements of Listing 12.04 or 12.06.

*Chambers I* (Opinion) (March 8, 2016) (Exh. 6A) (PageID.344-345).

In addition, the Court found that the ALJ did not articulate his reasons for the weight assigned to Dr. Fomunung's opinion:

> The ALJ's evaluation of Dr. Fomunung's opinion is a mixed bag. As an initial matter, it does not appear that Dr. Lagrave's records conflicted with Dr. Fomunung's opinion with respect to whether the bipolar disorder was controlled by medication. The page cited from Dr. Lagrave's July 2012 records merely stated that "Pt is working with psychiatrist to get meds filled with KHPB." PageID.686. However, the ALJ noted that plaintiff engaged in activities which indicated that he could deal with others, follow instructions and demonstrate responsibility. Such activities would be inconsistent with some of the limitations identified by Dr. Fomunung. Finally, while the ALJ gave partial weight to Dr. Fomunung's opinion, he did not clearly articulate which limitations he accepted and which limitations he rejected. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning"). For these reasons, this matter will be reversed and remanded to re-evaluate of Dr. Fomunung's opinion.

PageID.346-347.

---

[1] The "PageID" numbers related to the Court's Opinion in *Chambers I* refer to the numbers assigned in the administrative record in the present case.

2

For the reasons set forth in the opinion, this Court reversed and remanded the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g) and directed the Commissioner "to re-evaluate Dr. Fomunung's March 26, 2013 opinion and to re-evaluate whether plaintiff met the requirements of either Listing 12.04 or 12.06." PageID.348. *See* Judgment (March 8, 2016) (PageID.337).

Upon receipt of the Court's opinion and judgment, the Appeals Council entered an order vacating the decision and remanding the case "to an Administrative Law Judge for further proceedings consistent with the order of the court." PageID.350. The Appeals Council directed ALJ Donna J. Grit to perform the re-evaluations. PageID.142. ALJ Grit reviewed plaintiff's application de novo and entered a written decision denying benefits on March 3, 2017. PageID.142-160. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## II.     LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

### III. ALJ's DECISION

Plaintiff's application for DIB failed at the fourth step of the evaluation. At the first step, ALJ Grit found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 1, 2008, and that he met the insured status requirements of the Social Security Act through December 31, 2013. PageID.144. At the second step, the ALJ found that plaintiff had severe impairments of: alcohol dependence; asthma; anxiety (including social anxiety and generalized anxiety disorders); and mood disorder. PageID.145. At the third step, the ALJ found that plaintiff's impairments, including the substance use disorder, met section 12.04 of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.146.

Then, the ALJ addressed plaintiff's condition without the substance use.[2] The ALJ found that if plaintiff stopped the substance use, he would continue to have a severe impairment

---

[2] The ALJ summarized plaintiff's substance use as follows:

"Turning to the evidence of record, in December 2011, because of an altered mental status from alcohol, he required one week of inpatient treatment for alcohol poisoning and withdrawal (Ex 12F/76-126). However, less than one week after being released, the claimant returned because he had again become heavily intoxicated (Ex 12F/74-75). Subsequently, for intoxication and withdrawal resulting in severe depressive symptoms, suicidal ideation, and near complete incoherence, the claimant required further inpatient hospitalization at two different hospitals for a total often days from March into April 2012 (Ex 8F/3-11 and 12F/28-69).

Also because of his heavy alcohol use, his family found on an occasion in bed [sic] covered in his own urine. In fact, the record clearly showed he drank four to five fifths of alcohol each day (Ex 12F/46). During these alcohol binges, he did not taking his medication. Ultimately, the claimant's mother kicked him out of the house because of his alcohol use (Ex 12F/40). Even in spite of this, the claimant continued to drink excessively and was treated on an

or combination of impairments. PageID.148. However, the ALJ further found that "if the claimant stopped the substance use, the claimant <u>would not</u> have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpt. P, App. 1." *Id*. (emphasis added).[3]

> The ALJ decided at the fourth step that:
>
> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes, or scaffolds; no work at unprotected heights or with dangerous moving machinery; no commercial driving; only occasional exposure to fumes, dusts, gases, odors, or poor ventilation, or to extremes of heat or cold; able to understand, remember, and perform simple tasks, make simple decisions, and adapt to occasional changes in workplace routines; and have occasional interaction co-workers and supervisors, but no interaction with the public.

PageID.149.

The ALJ also found that if plaintiff stopped the substance use, he would be able to perform his past relevant work as a packager. PageID.158. Although the ALJ found plaintiff not disabled at step four, she continued to step five, where she found that plaintiff could perform other unskilled, light work in the national economy. PageID.159-160. Specifically, plaintiff could perform work as a garment sorter (55,000 jobs), assembler of small products (60,000 jobs), and folder (52,000 jobs). PageID.159-160.

> In reaching these determinations, the ALJ found that:
>
> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(1) and 404.1535). Because the substance use disorder is a contributing factor material to the determination of disability, the

---

emergent basis for alcohol intoxication. One of these treatment notes documented a blood alcohol level of 360, which is four and a half times the legal limit in the State of Michigan (Ex 12F/21)." Page ID.147.

[3] The medical expert at the administrative hearing, Howard Shapiro, M.D. provided no guidance on this crucial issue. In this regard, the ALJ found that, "Dr. Shapiro would not comment on the claimant's functioning without the substance abuse, nor did he acknowledge the claimant's admitted period of sobriety." PageID.154.

claimant was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date last insured.

PageID.160. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from June 1, 2008 (the alleged onset date) through December 31, 2013 (the date last insured). *Id*.

## IV.   DISCUSSION

Plaintiff raised two errors on appeal.

### A.   The ALJ erred in finding that plaintiff does not meet Listing 12.04.

Plaintiff contends that the ALJ committed reversible error when she evaluated Listing 12.04 without addressing Dr. Fomunung's March 26, 2013 opinion (Exhibit 17F, PageID.995-999). PageID.1862.

> An ALJ's explanation of his step-three determination need not be elaborate. The Sixth Circuit has consistently rejected a heightened articulation standard, noting in *Bledsoe v. Barnhart* that the ALJ is under no obligation to spell out "every consideration that went into the step three determination" or "the weight he gave each factor in his step three analysis," or to discuss every single impairment. 165 F. App'x 408, 411 (6th Cir. 2006). Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis. *See id.*

*Staggs v. Astrue*, No. 2:09-CV-00097, 2011 WL 3444014 at *3 (M.D. Tenn. Aug. 8, 2011).

As discussed, the ALJ found that if plaintiff stopped the substance use, he would not have a listed impairment. PageID.148. Dr. Fomunung's opinion addressed this issue directly stating in pertinent part:

> Mr. Chambers also has a history of alcohol abuse. He had a period of binge drinking in the spring of 2012 which led to an in-patient hospitalization. The alcohol abuse is not a cause of his problems. His abuse of alcohol is a symptom of his condition. Even if he were to remain completely sober, he would still have the underlying bipolar disorder with the limitations described above.

7

PageID.997.

While the ALJ does not have a heightened articulation standard at Step 3, her conclusion is contrary to Dr. Fomunung's opinion which addressed the exact issue under consideration, *i.e.*, whether plaintiff's alcohol abuse is a contributing factor material to the determination of disability. The ALJ's decision with respect to Listing 12.04 is not supported by substantial evidence. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405g. On remand, the Commissioner should evaluate Dr. Fomunung's March 26, 2013 opinion with respect to Listing 12.04, specifically whether plaintiff's alcohol abuse is a contributing factor material to the determination of disability.

> **B. The ALJ's decision errs by mishandling the treating source opinion.**

Plaintiff contends that the ALJ failed to give good reasons for rejecting Dr. Fomunung's opinions. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"). "The purpose of the good reasons rule is twofold: first, to let claimants understand the disposition of their cases; and second, to ensure that the ALJ applies the treating physician rule and permit meaningful review of the ALJ's application of the rule." *Hargett v. Commissioner of Social Security*, 964 F.3d 546, 552 (6th Cir. 2020) (internal quotation marks, brackets and citations omitted).

> In light of the procedural protections that the good reasons rule is meant to afford, we have applied the rule broadly. An ALJ fails to provide good reasons when the ALJ discounts a treating-source opinion without articulating the weight given to it. The ALJ must also provide an analysis of the factors under 20 C.F.R. § 404.1527(c). Additionally, the existence of a contrary conclusion by a different physician does not give the ALJ license to discount a treating-source opinion and make his own determination without explanation. Finally, an ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion.

*Id*. (internal citations omitted). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). *See* 20 C.F.R. §404.1527(c)(1)-(6) (Unless a treating source's medical opinion is given controlling weight under §404.1527(c)(2), the Commissioner considers all of the following factors in deciding the weight

he gives to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and, (6) Other factors.).

The ALJ noted the importance of Dr. Fomunung's opinions when she evaluated the medical evidence, referencing the multiple opinions from Leonard Vander Linde, M.D. and Bobga Fomunung, M.D., two psychiatrists that treated the claimant.  PageID.155.  The ALJ recognized that these opinions were the catalyst for the court remand and "paid particular attention" to them.  PageID.155.  As an initial matter, the ALJ addressed "multiple prescription slips dated from October 13, 2010, through May 15, 2012," on which these two doctors "repeatedly wrote conclusory statements the claimant was unable to work."  PageID.155.

> Some of these statements contained limited explanations for why the claimant was unable to work, such as indicating the claimant was struggling with depression that caused decompensation, or that he was undergoing medication management to stabilize his mood and anxiety (Ex 5F and 9F). In March 2013, Dr. Fomunung provided a letter stating the claimant could not work because of his mental health issues (Ex 16F/2).

PageID.155.

The ALJ found that

> In the case of these opinions, they are conclusory statements on an issue reserved for the Commissioner. They also contain no mention of the claimant's chronic alcohol abuse. Rather, they indicated the claimant's depression was preventing him from working. Even though the claimant had a severe impairment of depression that caused functional limitations during the relevant period, the record showed his alcohol abuse greatly increased his symptoms and decreased his mental functioning. Lastly, notwithstanding these statements are conclusory opinions reserved for the Commissioner, they also contain no function-by-function assessment of the claimant's abilities. Accordingly, I give these statements little weight.

PageID.155.

10

The ALJ also addressed a mental residual functional capacity (RFC) report completed by the claimant's therapist, Aimee Blanke, LMSW, and cosigned by Dr. Fomunung in March 2013 (Exh. 17F). PageID.156.

> This form indicated the claimant had extreme limitations in dealing with work stresses, behaving in an emotionally stable manner, and relating predictably in social situations. The claimant also had marked limitation in functioning independently and in demonstrating reliability. He had moderate limitation in dealing with the public, co-workers, and supervisors, using judgment, maintaining attention and concentration, and understanding, remembering, and carrying out complex job instructions. The claimant had mild limitation in understanding, remembering, and carrying out detailed, but not complex, job instructions. Overall, Ms. Blanke and Dr. Fomunung offered the claimant had mild limitations in activities of daily living, marked limitations in maintaining social functioning, extreme limitations in maintaining concentration, persistence, or pace, and one to two episodes of decompensation (Ex17F).
>
> To support this conclusion, the form contains typed comments that while in treatment the claimant's mood fluctuated despite attempts to regulate the mood with medication. It also notes the claimant needed frequent dose adjustments or changes in the type of medication while trying to find a workable medication regimen. Although the doctor indicated this had not been successful. If he attempted to return to work, he would have been expected to miss at least two days each month. The doctor also stated the claimant's anxiety expressed itself as an inability to work with or around strangers. If the claimant attempted a return to work, he would be best if not working with the general public and had limited contact with co-workers and supervisors. Finally, according to the doctor, the claimant's alcohol abuse did not cause the other impairments, but was a symptom of those impairments. Finally, the doctor stated that even if the claimant remained completely sober, his mood disorder would still cause the limitations expressed on the form comprising the opinion (Ex 17F).
>
> Despite being from a treating source, controlling weight cannot be assigned to the opinion. The opinion is internally inconsistent, not to mention entirely contrary to reason, as it offered mild limitations related to understanding, remembering, and carrying out detailed tasks, but then stated the claimant suffered from extreme limitations his ability to maintain concentration, persistence, or pace. It was also inconsistent to say the claimant could manage benefit funds in [sic] own best interest, but then indicate he had extreme limitation in his ability to behave in an emotionally stable manner.
>
> Furthermore, the doctor's assertion the claimant would have the same level of functioning even if sober is entirely inconsistent with the record. Instead, the record clearly demonstrated a several-year period of sobriety prior to his father's

passing during which the claimant's functioning was significantly better than after his return to heavy alcohol use. This is also supported by the treatment notes that stated the claimant's mental difficulties were directly related to the substance use and showed the claimant was able to remember to take his medication as long as he was not drinking (Ex 11F/13).

Additionally, Dr. Fomunung's statement that the claimant had one period of binge drinking in the spring of 2012 is not entirely accurate. Specifically, the claimant had more occurrences of binge drinking documented in the record relevant to the period at issue during which he received emergent treatment (Ex 12F). Thus, either the doctor did not know about the claimant's other binges, or he did not address them. Either way, this is another factor diminishing the weight given to this opinion.

Moreover, some of the limitations provided by the doctor were based on the claimant's subjective reports rather than objective findings. For example, despite the opinion stating the claimant had "periods of severe depression in which he is unable to function outside his home," this was preceded by, "[the claimant] reports . . . ." (Ex 17F/3).

PageID.156-157.

The ALJ also pointed out inconsistencies in the doctor's opinion:

Despite Dr. Fumunung's statement the claimant was unable to regulate his moods with medication or would miss work, the primary care physician, indicated otherwise by documenting the claimant's mood disorder was controlled by medication (Ex 13F/2 and 17F/3). I also note that Dr. Fomunung's opinion is not consistent with the fact the claimant worked on other people's cars, and enjoyed working on custom cars, bikes, and motorcycles, not to mention his admission that he attended car shows in large venues drawing crowds (Ex 10F/10, 12F/46, and Hearing Testimony).

PageID.157.

The ALJ concluded:

I note the claimant had contact with the public, but in light of a work setting, I give the limitation to no public contact some weight because it is consistent with the claimant's diagnosis of social anxiety disorder, which was provided prior to, and independent of, his alcohol use. This limitation is also consistent with the claimant's mental health notes that contain complaints of social difficulties and some statements of isolation prior to his return to alcohol (Ex 2F and 4F). Therefore, for all the above reasons, I give some weight to the portion of the opinion that the claimant had some social difficulties, but overall, give the opinions of Ms. Blanke and Dr. Fomunung little weight.

12

PageID.157.

Based on this record, the Court concludes that ALJ Grit did not give good reasons for giving little weight to Dr. Fomunung's opinion as set out in *Hargett*, 964 F.3d 546, *Blakley*, 581 F.3d 399, and 20 C.F.R. §404.1527.  In evaluating the doctor's opinion, ALJ Grit did not address the length of the treatment relationship, the frequency of examination, or the nature and extent of the treatment relationship as required by § 404.1527(c)(1)-(2).  While the ALJ suggested that the doctor was not familiar with plaintiff (noting that the doctor cosigned an RFC report prepared by plaintiff's therapist and that he may not have been aware of plaintiff's extensive history of alcohol abuse), she did not clearly address the issue.  The ALJ acknowledged the doctor's specialty as a psychiatrist, but did not appear to give his opinion more weight on that basis.  *See* § 404.1527(c)(5).  While the ALJ addressed the supportability of the opinion and the consistency of the opinion with the record, she did not provide much detail with respect to these factors.  *See* § 404.1527(c)(3)-(4).  The Court notes that defendant's brief fills in some of the gaps related to plaintiff's history of alcohol abuse and presents a more comprehensive discussion of why the doctor's opinion was not consistent with the medical record.  However, the Commissioner's brief is not a substitute for an ALJ's decision.  For these reasons, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Fomunung's opinion.  On remand, the Commissioner should address each of the factors set forth in 20 C.F.R. § 404.1527(c).

### V. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-evaluate Dr. Fomunung's March 26, 2013 opinion with respect to Listing 12.04.  The

Commissioner is also directed to evaluate the doctor's opinion giving attention to each of the factors set forth in 20 C.F.R. § 404.1527(c). A judgment consistent with this opinion will be issued forthwith.

Dated: September 28, 2020 /s/ Ray Kent
RAY KENT
United States Magistrate Judge

14